No. 81-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

PAUL MALINAK,

Plaintiff and Appellant,

vs.

SAFECO TITLE INSURANCE COMPANY OF
IDAHO, and LINCOLN COUNTY TITLE COMPANY,

Defendants and Respondents.

---

Appeal from: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln
Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

For Appellant:

Murray, Kaufman, Vidal and Gordon, Kalispell, Montana
Leonard L. Kaufman argued, Kalispell, Montana
S. Y. Larrick argued, Kalispell, Montana

For Respondents:

Warden, Christiansen & Johnson, Kalispell, Montana
Todd A. Hammer argued, Kalispell, Montana
Murphy, Robinson, Heckathorn and Phillips, Kalispell,
Montana
I. James Heckathorn argued, Kalispell, Montana

---

Submitted: March 31, 1982

Decided: **February 25, 1983**

Filed: FEB 25 1983

*Ethel M. Harrison*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

On November 9, 1982, this Court issued an opinion holding that the appeal taken by the appellant Paul Malinak was not timely and we ordered the appeal dismissed. 39 St.Rep. 2046. In petitioning for reconsideration and rehearing, Malinak pointed out that this appeal was from a partial judgment in the District Court that such partial judgment was not appealable until the District Court, directed the entry of a final judgment and determined that there was no just reason for delay under Rule 54(b), M.R.Civ.P., and that when the District Court did so direct the entry of final judgment in this case, the appeal had been timely filed by Malinak. This Court, in reviewing the steps taken for appeal as shown in the record, missed that point, for which this author accepts complete responsibility. In determining the petition for reconsideration and rehearing, we found that the appeal was timely filed, granted rehearing and reconsideration, ordered that our opinion of November 9, 1982, be withdrawn, and reinstated the appeal.

We come now to consider this appeal on its merits. Malinak appeals from a summary judgment granted by the District Court, Nineteenth Judicial District, Lincoln County, determining in effect that he had no right of recovery against the title insurance companies which are defendants in this case.

We determine that the summary judgment must be reversed, and the cause remanded for further proceedings in the District Court.

Malinak purchased 640 acres of land in Lincoln County, Montana, in 1970. At the time he purchased the property, he

was aware that St. Regis Paper Company, a New York corporation, had rights to timber on the land, although he was not sure of the extent of those rights.

In 1973, a St. Regis representative informed Malinak that a timber reservation owned by St. Regis would expire in 1973, and requested of Malinak a one-year extension. Malinak granted the request of a one-year extension. At the same time, Malinak sought to exchange other timber rights which he believed were his on the land for additional grazing rights from St. Regis.

In 1975, Malinak entered into a contract to sell his land to Gerald Williams. Malinak's realtor, Heller-Mark and Company of Denver, requested a commitment of title insurance from Lincoln County Title Company. The title company conducted a search of the records in Lincoln County and prepared a commitment for title insurance through Safeco Title Insurance Company of Idaho. The commitment was dated July 10, 1975.

Malinak reviewed the title commitment and advised his realtors that the exceptions listed in Schedule B of the title commitment, nos. 6 and 9 were in error. Each of these exceptions on the title commitment related to merchantable timber claims apparently vested in St. Regis Paper Company and to J. Neils Lumber Company through prior recorded instruments. At Malinak's behest, Heller-Mark and Company requested Lincoln County Title Company to check the restrictions, and to delete them.

Thereafter Lincoln County Title Company prepared a "date down endorsement," dated July 14, 1975, in which those exceptions were deleted. It delivered the commitment, with

3

the date down endorsement, to Malinak and Heller-Mark and Company.

The sale to Williams fell through and later negotiations for the purchase of Malinak's property were conducted and a sale to Lowell L. Novy and Canwood Pacific Land Company was completed by Malinak. In the transfer, Malinak warranted title to the lands he was selling to Novy without the timber reservations, relying on the commitment for title insurance which he had received. On December 29, 1975, Safeco Title Insurance Company of Idaho, through its agent Lincoln County Title Company, issued its policy of title insurance in accordance with the title commitment as modified by the date down endorsement. No exception was noted in the policy for the timber rights or reservations belonging to St. Regis.

In the fall of 1977, St. Regis notified Novy of its plan to cut and remove trees from the land Novy was purchasing from Malinak. Novy demanded payment from Safeco Title Insurance Company for the timber rights on his land. On January 27, 1978, Safeco notified Malinak that if it had to pay Novy for the timber rights, which Malinak warranted to Novy, it would seek to be reimbursed by Malinak. Malinak received a second letter from Safeco's associate general counsel on February 8, 1978, in which Safeco said that it had retained a Great Falls law firm to research the issue of the validity of St. Regis' timber reservations. The letter stated that research showed that St. Regis' claim to the timber was likely to be valid.

On March 13, 1978, Malinak intervened as a plaintiff in Novy's lawsuit to enjoin St. Regis from cutting timber on the lands sold to Novy. Malinak also named Lincoln County Title Company and Safeco Title Insurance Company as defendants.

4

Malinak's claim for relief against Safeco and Lincoln Title was for damages involving travel costs, expenses, attorneys fees and other damages which he incurred in attempting to defend Novy's right to the timber. Malinak's complaint alleges that he relied on the correctness of the title commitment as amended by the date down endorsement in warranting all timber rights to Novy. Malinak's complaint sought recovery on the grounds of negligence and breach of warranty.

Safeco Title has paid to Novy the value of the timber rights, and the only remaining parties are Malinak, Lincoln County Title and Safeco Title Insurance Company. Safeco Title cross-claimed against Lincoln County Title, and both defendants counterclaimed against Malinak. Both defendants moved for summary judgment on Malinak's claim against them. On November 26, 1980, the District Court granted defendants' motion for summary judgment against Malinak. On January 6, 1981, after hearing on Malinak's motion to amend the judgment, the District Court found that there was no just reason for delay and directed entry of judgment under Rule 54(b), M.R.Civ.P. From this summary judgment, Malinak timely appealed.

A summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file show there is no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P. In this case, Malinak principally contends (1) that the District Court erred in determining that the title insurance companies were not liable as a matter of law to Malinak, and (2) that a genuine and material issue of fact existed as to Malinak's state of

mind with respect to his knowledge as to the status of his timber rights on the land. Therefore, Malinak contends that the summary judgment against him was improper.

In a recent case, Lipinski v. Title Insurance Company and Flathead County Title Company (Dec. 23, 1982), ____ Mont. ___, ___ P.2d ___, 39 St.Rep. 2283, this Court held that a title insurance company was liable to its insured for failure to determine and disclose certain ditch right easements which a search of the record title would have revealed. Malinak contends here for a different aspect of the liability of a title insurance company, that is, liability to the vendor or seller of the land, for providing to the seller a title commitment which fails to disclose to the seller defects in the seller's title, where the seller relies on the title commitment to warrant the title he is selling.

Title insurance is a contract to indemnify the insured against loss through defects in the insured title or against liens or encumbrances that may affect the insured title at the time the policy is issued. Walters v. Marler (Cal. App. 1978), 147 Cal.Rptr. 655, 83 Cal.App.3d 1. Undoubtedly the named insured in a policy may enforce the terms of the contract of title insurance for defects in the title conveyed and insured.

A title commitment is in a somewhat different category from the title policy that follows it. Ordinarily a commitment is ordered by the seller for the purpose of exhibiting it to the buyer as a representation of the quality of the title seller expects to sell to the buyer. A title commitment naturally contemplates a search by the title insurer of the chain of title, an opinion by an expert of what the search reveals, a guaranty that the search was

6

accurate and that the title commitment expresses the quality of the title of the seller as shown by the record.  The person who seeks a title insurance commitment expects to obtain a professional title search, as well as a professional legal opinion as to the condition of the title and a guaranty that the title expressed in the commitment will be insured to the extent of the policy coverage.  A title commitment does not propose that the title company will insure the property; rather that the title company will insure the title.  The title insurer, of course, does not agree to clear the title; rather by its commitment, the title company agrees to afford coverage in a title policy later to be issued insuring the title according to its commitment.

The function of a title insurance commitment was not lost on the California appellate court in Jarchow v. Transamerica Title Insurance (1975), 48 Cal.App. 3d 917, 122 Cal.Rptr. 470, 485, where it said:

> "When a title insurer presents a buyer with both a preliminary title report and a policy of title insurance, two distinct responsibilities are assumed.  In rendering its first service, the insurer serves as an abstractor of title and must list all matters of public record regarding the subject property in its preliminary report (Hardy v. Admiral Oil Company, 56 Cal.2d 836, 841, 16 Cal.Rptr. 894, 366 P.2d 310; 2 Miller and Starr Current Law of California Real Estate (1968), § 226, at 284-285).  The duty imposed upon an abstractor of title is a rigorous one: 'An abstractor of title is hired because of his professional skill, and when searching the public records on behalf of a client, he must use the degree of care commensurate with that professional skill . . .  The abstractor must report all matters which could affect his client's interests and which are readily discoverable from those public records ordinarily examined when a reasonably diligent title search is made.'  (Citing cases)  Similarly, a title insurer is liable for his negligent failure to list recorded encumbrances in preliminary title reports.  (Citing cases)."

7

Jarchow involved the duty of a title insurance company with respect to the purchaser of property. The courts of Hawaii and Alaska have applied to title insurers the duty carefully to examine and report the title to sellers in Chun v. Park (Hawaii 1970), 462 P.2d 905, 907, and Transamerica Title Insurance Company v. Ramsey (Alaska 1973), 507 P.2d 492, 496.

The title insurers in this case contend that they are absolved from any liability to Malinak by virtue of the following clause contained in the title insurance commitment:

> "This Commitment is further conditioned by the conditions and stipulations and exclusions from coverage of the basic form of the policy or policies committed to be issued. The examination of the public records made by Company as to the land set out in schedule A was made wholly for determining the insurability of the title to said land and not for reporting on the condition of the record."

The foregoing condition of the title commitment is, to say the least, ambiguous. It would be difficult for a trained lawyer not to speak of a layman, to distinguish the difference between the "insurability of the title" after examination of the public records, and the "condition of the record." But we do not rely on the possible ambiguity in the clause to determine this issue. It is within the expectations of the parties, the seller ordering the title commitment and the title insurer inspecting the public records, that the title commitment will accurately reflect the insurability of the title, or the condition of the public record, as the case may be, with respect to that title. We find a duty on the part of the title insurer when it issues a title commitment which later forms the basis for a title insurance policy, particularly where the seller relies on the title commitment, to base its title commitment and report

8

upon a reasonably diligent title search of the public records. A breach of that duty would constitute negligence.

A second ground, relied upon by the District Court in granting summary judgment was that Malinak had "knowledge" of the title defects at the time he agreed to convey the land and to warrant its title to Novy.

At the summary judgment stage, Malinak's possible knowledge of the defects in his title are not in point. Barring circumstances amounting to fraud on Malinak's part, or his possible comparative negligence in conveying the title when a reasonably prudent person might not do so, Malinak's knowledge of the status of his title is irrelevant with respect to the liability of the title insurer. It is stated in Maggio v. Abstract Title and Mortgage Corporation (1950), 277 App.Div. 940, 98 N.Y.S.2d 1011, 1013:

> "In the case of a title insurance policy, the insurer undertakes to indemnify the insured if the title turns out to be defective. That is the purpose of procuring the insurance and knowledge of defects in the title by the insured in no way lessens the liability of the insurer. The doctrine of skill or negligence has no application to a contract of title insurance."

See also Shotwell v. Transamerica Title Insurance Company (Wa. 1978), 91 Wash.2d 161, 588 P.2d 208.

It is evident that a material issue of fact does exist as to Malinak's knowledge in the circumstances under which he conveyed and warranted his title to Novy.

Accordingly, the summary judgment entered by the District Court against Malinak is reversed and this cause is remanded for further proceedings in accordance with this opinion.

9

_____
                    Justice

We Concur:

_____
            Chief Justice

_____
               Justices

_____
Hon. Peter G. Meloy,
District Judge, sitting
for Mr. Justice Frank B.
Morrison, Jr.

Mr. Chief Justice Frank I. Haswell, concurring in part and dissenting in part:

I concur that summary judgment is improper. It is precluded by the existence of a genuine issue of material facts as to whether Malinak had knowledge of the title defects in question at the time he warranted the title to Novy.

I strenuously dissent from the holding that title insurance companies have a duty to conduct a diligent search for title defects when they issue a commitment to insure a land title, that the seller has a right to rely thereon to that extent, and that an action for damages lies in favor of the seller for breach of that duty.

The purpose of a title search by a title insurance company is to determine the insurability of a land title, not defects of record therein. This is clear from the terms of the commitment:

> " . . . The examination of the public records made by the Company . . . was made wholly for determining the insurability of the title . . . and not for reporting on the condition of the record."

In my view, the majority have created a duty beyond the scope and coverage of the commitment. And additionally, they have created a right of reliance thereon out of thin air.

_____
Chief Justice

I concur in the foregoing.

_____
Justice

-11-