# STATE OF MICHIGAN

# COURT OF APPEALS

YASSER ELSEBAEI and RHONDA ELSEBAEI,

        Plaintiffs-Appellees,

and

MAHMOOD AHMEND and SAEEDA AHMED,

        Plaintiffs,

v

PHILIP R. SEAVER TITLE CO, INC., PRS
ASSET, INC., SEAVER TITLE AGENCY,
L.L.C., and SEAVER TITLE AGENCY II, L.L.C.,

        Defendants-Appellants.

UNPUBLISHED
November 12, 2015

No. 323620
Oakland Circuit Court
LC No. 2008-092207-CZ

Before: SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendants appeal as of right an order denying defendants' motion for summary disposition. We reverse and remand for proceedings consistent with this opinion.[1]

This case arises from plaintiffs' claim against defendants for breach of fiduciary duty. The parties have engaged in extensive litigation, arbitration, and a prior appeal. This Court previously summarized the underlying factual basis of the proceedings that led to defendants' first appeal:

> Plaintiffs had entered into a contract with Landmark Construction & Development Corporation (Landmark) for the construction of a house in Farmington Hills. Plaintiffs financed the construction by obtaining construction loans from Charter One Bank. Charter One then contracted with defendants, who, as part of their obligations to Charter One, would obtain sworn statements and subcontractor lien waivers from Landmark, perform title searches for liens against

---

[1] Because Yasser and Rhonda Elsebaei are the only plaintiffs who are party to this appeal, they are referred to as "plaintiffs" throughout this opinion.

-1-

plaintiffs' property, and send endorsement letters or disbursement letters to Charter One informing Charter One that defendants would insure up to a certain amount of money. Charter One would then send plaintiffs' funds to defendants for disbursement to Landmark. [*Elsebaei v Philip R Seaver Title Co, Ins*, unpublished opinion per curiam of the Court of Appeals, issued December 27, 2012 (Docket Nos. 303623; 304605), p 2.]

Throughout the parties' dealings, defendants issued three loan payments to Landmark. The last payment was a joint check to Yasser and Landmark at Yasser's request. However, the depository bank paid Landmark without Yasser's endorsement. Yasser sued the depository bank and the drawee bank and obtained a judgment. Further, Landmark admitted to defrauding plaintiffs, and plaintiffs obtained a consent judgment against Landmark. Apparently, the owner of Landmark then fled the country, failing to pay plaintiffs.

Plaintiffs filed a complaint against defendants for negligence, alleging breach of fiduciary duty. Defendants filed a motion for summary disposition arguing that they did not owe plaintiffs a duty. The trial court originally denied defendants' motion for summary disposition, and the parties agreed to arbitration. Plaintiffs prevailed, and defendants appealed to this Court.

On appeal, defendants argued that the trial court erred in denying their motion for summary disposition because defendants contracted with Charter One, not plaintiffs, and thus owed plaintiffs no duty. *Id.* at 2. This Court determined that defendants owed a common law duty to plaintiffs because their contractual actions concerned the protection of plaintiffs' property interests. *Id.* at 3. However, the Court acknowledged that "a title insurer should be liable in accordance with the terms of the title policy only and should not be liable in tort," *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 4; 772 NW2d 827 (2009)[.]" *Elsebaei*, unpub op at 3-4. The panel explained that if the *Wormsbacher* holding applied to this case, then "plaintiffs' negligence claim based on defendants' common-law duty would be barred." *Id.* at 4. The relevant question to that determination was whether defendants were acting solely as a title insurer for Charter One. *Id.* The Court stated:

There was evidence that defendants were in control of the disbursement of the loan proceeds to Landmark, and that control may have exceeded the role of a title insurer. See MCL 500.7301(a). The trial court at one point referred to the relationship between plaintiffs and defendants as an "escrow" relationship. However, the *Wormsbacher*/title-insurer issue was not explicitly reached below, and we decline to resolve this issue for the first time on appeal but instead hold that the trial court must analyze this issue on remand. [*Id.*]

In addition, defendants asserted that they owed no duty to plaintiffs because Landmark's criminal conduct was unforeseeable. *Id.* The Court explained that "defendants' common law duty to plaintiffs did not extend to Landmark's unforeseeable criminal action unless defendant had a 'special relationship' with plaintiffs." *Id.* The determination of whether a special relationship exists is "whether the plaintiff entrusted himself to the control and protection of the defendant, with a consequent loss of control to protect himself." *Id.* (citation omitted). The Court noted facts that could potentially show a special relationship between plaintiffs and defendants, but declined to resolve the issue and ordered the trial court to address it on remand.

*Id.* The Court "vacate[d] the trial court's grant of partial summary disposition to plaintiffs and direct[ed] the court to address the *Wormsbacher*/title-insurer issue and the special-relationship issue on remand." *Id.* After remand, defendants filed a motion for summary disposition, which the trial court denied. Defendants now appeal the trial court's second denial of their motion for summary disposition.

There are two issues which this Court instructed the trial court to address on remand. First, whether defendants were acting solely in accordance with the terms of the title policy pursuant to *Wormsbacher,* 284 Mich App 1, such that tort liability would be precluded. *Elsebaei*, unpub op at 4. Second, whether a special relationship existed between plaintiffs and defendants that would extend defendants' common law duty to include Landmark's unforeseeable criminal acts. *Id.* We conclude that the trial court erred in denying defendants' motion for summary disposition because a title insurer acting within the terms of the title policy is not liable in tort.

This Court reviews de novo a trial court's decision granting summary disposition under MCR 2.116(C)(10). *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A grant or denial of summary disposition based upon a failure to state a claim pursuant to MCR 2.116(C)(8) is also reviewed de novo on appeal. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). In addition, "[w]hether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

As explained by this Court previously, to establish a prima facie case of negligence, plaintiff must prove four elements: duty, breach of that duty, causation, and damages. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). The crux of the issue here is whether defendants owed plaintiffs a duty to avoid negligent conduct. *Krass v Tri–Co Security, Inc*, 233 Mich App 661, 668; 593 NW2d 578 (1999). "The question of duty turns on the relationship existing between the actor and the injured person." *Id.* In regard to whether a duty to a third party arises from a contractual obligation, "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004). This Court determined that defendants owed a common-law duty to plaintiffs. *Elsebaei*, unpub op at 4. The Court explained that

> [P]laintiffs financed the construction of their house by obtaining construction loans from Charter One Bank. Charter One then contracted with defendants, who, as a part of their obligations to Charter One, were to perform certain actions affecting plaintiffs. Defendants voluntarily undertook obligations with respect to the disbursement of funds, and they had a duty to perform them in a nonnegligent manner that extended to third parties. Defendants' actions concerned the protection of plaintiffs' property interests. [*Elsebaei*, unpub op at 3 (citation omitted).]

We note, generally, that this Court's ruling on an issue in a case will bind a trial court on remand as well as the appellate court in subsequent appeals. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). The law of the case doctrine provides: "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Id*. at 259.

Although this Court determined that a common-law duty existed between plaintiffs and defendants, it recognized that "a title insurer should be liable in accordance with the terms of the title policy only and not liable in tort." *Wormsbacher*, 284 Mich App at 4, quoting *Mickam v Joseph Louis Palace Trust*, 849 F Supp 516, 522 (ED Mich, 1993). In *Wormsbacher*, the plaintiffs purchased residential lots and hired the defendants to conduct title searches and to provide title commitments. *Wormsbacher*, 284 Mich App at 2. The plaintiff relied on the title searches, and defendants failed to apprise him of a permanent injunction barring commercial use of the lots. *Id*. This Court, relying on *Mickam*, determined that the defendants were not liable in tort for its obligations under the title policy. *Id*. at 4. Accordingly, the Court affirmed the trial court's grant of summary disposition to the defendants. *Id*. at 4.

In *Mickam*, the plaintiff purchased property from U-Wash. *Mickam*, 849 F Supp at 519. The plaintiffs did not obtain their own title search, but relied on a title search U-Wash obtained from the defendant title agency. *Id*. at 518-519. When the plaintiffs applied for a mortgage, they learned of liens on the property that had not been included in the title search. *Id*. at 519. The plaintiffs sued the defendant, claiming it negligently conducted the title search. *Id*. at 522. The *Mickam* Court explained that "[t]o protect the rights and expectations of the parties, a title insurer should be liable in accordance with the terms of the title policy only and should not be liable in tort. To hold otherwise does violence to the whole concept of insurance." *Id*. at 522. The Court continued its analysis, expanding its holding to apply to third parties:

> [N]o Michigan court has addressed whether a title agent or title insurer may be liable to a third party. Having refused to find that a title insurer or agent has the same duty as an abstractor to those with whom it enters into a contract, this Court also refuses to extend this duty to third parties. A title insurer or agent is not liable in tort to third parties. [*Id*.]

Accordingly, the *Mickam* Court affirmed summary disposition for the defendant title agency.

As our Court explained, pursuant to the relevant law, defendants are not liable in tort if they were acting solely within their role as title insurer. However, on remand plaintiffs argued, and the trial court agreed, that *Wormsbacher* and *Mickam* did not apply to the current case based on factual distinctions. We agree with defendants that the trial court failed to comply with the remand order. This Court instructed the trial court to determine whether defendants were acting as a title insurer, specifically noting its concern that defendants may have been acting outside their role as title insurer because they were in control of the disbursement of the loan proceeds. However, the trial court instead determined that *Wormsbacher* did not apply because plaintiffs were not in a contract with defendants directly, which was not the analysis requested by this Court.

Further, even on appeal, plaintiffs fail to address this issue, and argue instead that because the negligent act in question did not involve a title search, such as in *Mickam* and *Wormsbacher*, and because plaintiffs were not insured under the title policy, as in *Wormsbacher*, the holdings do not apply. We are not convinced by plaintiffs' assertions. This Court plainly held that the *Wormsbacher* holding was applicable in this manner, and the necessary determination was whether defendants were acting as a title agent, specifically when they were in control of the loan proceeds.

Defendants address the issue, claiming that their control over the payment of the loan proceeds was a common obligation of a title agent, and necessary in order to ensure that the insured, Charter One, maintained priority over other liens. MCL 500.7301(b) defines a title insurer as "any domestic, foreign, or alien insurer issuing title insurance, either directly or indirectly, . . . with respect to any real estate located in this state." A title insurance policy is defined as:

> [A]ny policy or contract insuring, guaranteeing, or indemnifying against loss or damage suffered by owners of real estate or by other persons interested in the real estate by reason of liens, encumbrances upon, defects in, or the unmarketability of the title to the real estate, or other matters affecting the title to real estate or the right to the use and enjoyment of the real estate, and insuring, guaranteeing, or indemnifying the condition of the title to real estate or the status of any lien on the real estate. [MCL 500.7301(c).]

These definitions do not limit the role of a title insurer or policy terms; rather, the definitions suggest a broad scope for both. More specifically, the definitions do not limit the insurer or the policy to include only title searches, as suggested by plaintiffs. Furthermore, there is nothing in the record to show that defendants were not obligated under the title insurance policy to disburse the loan proceeds, or that such an act was outside of its contractual agreement. Rather, as argued by defendants, it seems likely that the processing of the funds was a contracted for obligation pursuant to the agreement. Notably, plaintiffs do not argue that defendants were not contracted to process the payments. Further, Spratt's testimony established that it was her job to authorize the disbursement of funds to the lender, and that for this title, the bank would disburse the funds to defendants who would distribute to the builders. There was no evidence to suggest this was not an agreed-upon practice within the policy. Further, defendants provide case law which shows that title companies act as disbursing agents in construction projects, although we acknowledge that the case does not concern an action for negligence. *Koppers Co, Inc, v Garling & Langlois*, 594 F2d 1094 (CA 6, 1979). Accordingly, we conclude that *Wormsbacher* does apply, and that defendants are not liable in tort to plaintiffs.

Based on our determination that plaintiffs' claim for negligence is barred, it is unnecessary to determine whether there is a special relationship between the parties that would act to extend defendants' duty to include Landmarks' criminal acts.

-5-

Reversed and remanded.  Defendants, the prevailing parties, may tax costs.  MCR 7.219.

/s/ David H. Sawyer
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood